UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JOHN MURRAY,

                        Petitioner,                                          **OPINION AND ORDER**

            -against-                                                        21 Civ. 5343 (KMK) (JCM)


JOSEPH NOETH, Superintendent,
Attica Correctional Facility,

                        Respondent.
-------------------------------------------------------------X

        Petitioner John Murray ("Petitioner") brings this *pro se* habeas corpus petition

("Petition") pursuant to 28 U.S.C. § 2254, challenging his state court convictions following a

jury trial in the Supreme Court of the State of New York, Westchester County. (Docket No. 2).

By letter dated March 22, 2022, Petitioner requested that his Petition be stayed and held in

abeyance so he could pursue a New York C.P.L § 440.10 motion ("440.10 Motion") in state

court. (Docket No. 23).  Respondent Joseph Noeth ("Respondent") opposed Petitioner's request

to stay on April 21, 2022, (Docket No. 24), and Petitioner replied on May 9, 2022, (Docket No.

25).  For the reasons set forth below, Petitioner's request is denied.

**I.  BACKGROUND**

        The Court limits the background facts to those necessary for the present application.

**A.  The Crime, Investigation and Arrest**

        On October 3, 2012 at approximately 1:38 p.m., Petitioner fatally shot Terry Camper

("Mr. Camper") twice in the back of the head in the City of Peekskill, West Chester County

("Peekskill"). (Docket No. 17 at 1-2[1]).  At the time of the shooting, Petitioner was having an

---

[1] All page numbers refer to the pagination on ECF unless otherwise specified.

affair with Mr. Camper's wife, Beatrice Camper ("Mrs. Camper").[2] (Docket No. 17 at 1).

Petitioner and Mrs. Camper conspired to kill Mr. Camper, who worked as a livery cab driver, so

that they could continue their relationship and share the proceeds of a life insurance policy that

belonged to Mr. Camper. (*Id.* at 1-2; *see also* Docket Nos. 19-4 at 302:20-306:12; 19-5 at 26:8-

20, 47:10-48:10).  Mrs. Camper gave Petitioner her husband's cell phone number, which

Petitioner used to lure Mr. Camper to the location of the shooting under the guise of needing a

cab ride. (Docket No. 17 at 2, 9; *see also* Docket No. 19-5 at 65:18-22).  At the time of the

shooting, witnesses on the same street heard a "kind of cracking noise" or a sound "like . . . a

firecracker." (Docket No. 19-3 at 153:11-26, 172:2-15).  Mr. Camper's body and a small caliber

bullet were found in his car less than an hour later. (Docket No. 19-3 at 122:2-11, 105:9-110:24,

123:21-129:2).

During the investigation that ensued over the next two days, law enforcement located Mr.

Camper's phone and used it to trace the phone number Petitioner used to request the ride.

(Docket Nos. 19-3 at 257:18-260:18-19; 19-4 at 9:2-10:16, 218:17-25).  Law enforcement

interviewed Sandra Dolman ("Dolman"), the recipient of a call that the phone had received on

the date of the incident, and Dolman provided Petitioner's full name. (Docket Nos. 19-3 at

262:15-263:5, 265:8-19, 273:19-274:3, 335:18-337:6, 338:17-340:5; 19-5 at 289:3-11; *see also*

Docket No. 17 at 12-13).  Law enforcement then pulled Petitioner's criminal record and

identified him as the recipient of a traffic summons for driving a red Dodge Neon registered to

Patricia Murray ("Mrs. Murray"), his wife. (Docket No. 19-3 at 274:22-276:23).  Surveillance

footage showed a dark colored Dodge Neon crossing the Bear Mountain Bridge into Peekskill at

---

[2] Mrs. Camper was charged with Murder in the Second Degree by the same indictment as Petitioner. (Docket No. 17 at 2 n.1).  On February 20, 2014, pursuant to a cooperation agreement, Mrs. Camper pled guilty to Murder in the Second Degree in the County Court, Westchester County. (*Id.*).  On June 17, 2014, in exchange for her testimony at Petitioner's trial, she was sentenced to fifteen years to life. (*Id.*).

about 1:00 p.m. and crossing in the other direction at about 2:00 p.m. on the date of the incident. (Docket Nos. 19-3 at 316:16-317:9; 19-4 at 91:13-105:11). Pursuant to a search warrant for Petitioner's home in the City of Newburgh ("Newburgh"), law enforcement located insurance documents tying Mrs. Murray to the Dodge Neon. (Docket No. 19-5 at 290:12-295:18). Petitioner was arrested in the area of his home shortly thereafter. (*Id.* at 231:9-232:4). Law enforcement impounded the Dodge Neon pursuant to another search warrant that evening. (Docket No. 19-3 at 278:8-22).

**B. State Court Conviction, Post-Trial Motions and Sentencing**

On April 17, 2014, after a trial before the Honorable Barbara Zambelli in the County Court, Westchester County ("County Court"), a jury found Petitioner guilty of Murder in the First Degree and Criminal Possession of a Weapon in the Second Degree. (Docket No. 17 at 2; *see also* Docket No. 19-6 at 296:9-18). The following thirty-eight (38) witnesses testified for the prosecution: Mary Givens, Barbara Carter, Ruth Smith, Evelyn Jenkins, Shirley Hewitt, Police Officer Elizabeth Folch, John Biros, Earnestine Haskins, James Michael Howard, Sergeant Donald Halmy, Tanya Ruff, Detective Ralph D'Aliso, Dolman, Sergeant Raymond Henderlong ("Sergeant Henderlong"), Michelle Johnson, Officer Salvatore Rosso, Detective Thomas Burke, Inspector General Alan Snyder, Jose Guervarra, Detective Marcos Martinez, Danielle O'Mara Damin, Mrs. Camper, Parole Officer Miriam Solorzano, Chief of Police Eric Johansen, Trooper Jason Vidacovich, Keith Mancini, Maurice Woodbyne, Detective Joseph McGann, Daniel Rothenberg, Detective Todd Gallaher, Dr. Virginia Richards, Detective Arthur R. Holzman, Investigator Richard Corvinus, Rose Sepulveda, Holly O'Connor, Detective Robert Barber, Officer Andre Wright and Dean Delitta. (*See generally* Docket Nos. 19-3–19-6).

On or about June 13, 2014, Petitioner's trial counsel, Robert W. Georges ("Georges"),

moved to set aside the verdict pursuant to New York C.P.L. § 330.30 ("330.30 Motion") raising

ten grounds, which he supplemented with four additional grounds on June 20, 2014. (Docket

Nos. 18-1; 18-2; *see also* Docket No. 17 at 17-19).  The County Court denied the motion on

August 26, 2014. (Docket No. 18-4).  Petitioner then moved for reargument, which the County

Court denied on September 23, 2014. (Docket No. 18-7; *see also* Docket No. 17 at 19).[3]

On September 30, 2014, Petitioner was sentenced to life imprisonment without parole for

the murder conviction, to run concurrently with a determinate term of fifteen years plus five

years of post-release supervision for the criminal possession of a weapon conviction. (Docket

No. 19-7 at 12; *see also* Docket No. 17 at 19).

## C.  Direct Appeal

Georges filed a notice of appeal from Petitioner's judgment of conviction and the denial

of his 330.30 Motion on October 21, 2014. (Docket No. 17 at 20).  On April 2, 2015, the

Appellate Division, Second Department ("Appellate Division") assigned Andrew W. Sayegh

("Sayegh") as *pro bono* counsel for purposes of the appeal, and ordered "that in the event the file

has been sealed, it is hereby unsealed for limited purpose of allowing assigned counsel . . . access

to the record for purpose of preparing the appeal." (Docket No. 18-15 at 3).  After Petitioner filed

a series of unsuccessful motions to relieve Sayegh of this assignment, Sayegh perfected

Petitioner's appeal on or about March 5, 2017, (Docket Nos. 17 at 21-22; 18-8; 18-9; 18-12; 18-

13), and Petitioner obtained permission to file a *pro se* supplemental brief, (Docket No. 18-13).

To support his arguments therein, Petitioner requested that the Appellate Division (1) unseal the

search warrants for his home and car; (2) provide him with the search warrants, the grand jury

---

[3] The County Court's denial is dated January 6, 2014, (Docket No. 18-7), but based on the rest of the procedural history, that appears to be an error.

minutes and various other transcripts; and (3) order a reconstruction hearing in light of the fact

that Petitioner and Mrs. Camper's *Huntley* hearing and other pre-trial transcripts appeared to be

missing. (Docket Nos. 18-14; 18-16; *see also* Docket No. 25 at 2).  The People responded that

the requested records had already been unsealed and provided to Petitioner, to the extent they

were available. (Docket No. 18-15 at 5).  The Appellate Division denied Petitioner's requests on

December 22, 2017. (Docket No. 18-17). Petitioner filed his *pro se* supplemental brief on

December 4, 2017, (Docket No. 18-18), and the Appellate Division affirmed Petitioner's

conviction on July 25, 2018, *People v. Murray*, 82 N.Y.S.3d 455 (2d Dep't 2018).  Petitioner

sought leave to appeal to the New York Court of Appeals ("Court of Appeals"), which was

denied on February 19, 2019. *See People v. Murray*, 32 N.Y.3d 1208 (2019); (Docket No. 17 at

25-26).

## D.  Post-Conviction State Court Proceedings

On October 11, 2019, Petitioner, proceeding *pro se*, filed a writ of error *coram nobis* in

the Appellate Division, claiming ineffective assistance of appellate counsel on the grounds that

counsel: (1) failed to obtain the above search warrant records as well as transcripts of Petitioner's

arraignment and *Huntley* hearing; (2) failed to raise meritorious issues, *inter alia*, that the People

presented to the grand jury a fake call log sheet listing Petitioner's name; (3) advanced deficient

legal arguments; and (4) failed to communicate with Petitioner. (Docket No. 18-22; *see also*

Docket Nos. 18-24; 18-25).  By Decision and Order, dated August 12, 2020, the Appellate

Division denied Petitioner's application. *People v. Murray*, 126 N.Y.S.3d 683 (2d Dep't 2020).

The Court of Appeals denied leave to appeal on November 30, 2020. *People v. Murray*, 36

N.Y.3d 930 (2020).

**E. The Petition**

Petitioner filed the instant Petition on May 27, 2021,[4] (Docket No. 2 at 24), which

Respondent opposed on December 14, 2021, (Docket No. 18).  The Petition raises the following

four grounds for relief: (1) the trial court improperly denied Petitioner access to Sergeant

Henderlong's disciplinary record and the ability to cross-examine him on that topic; (2) the

People failed to prove Petitioner's guilt beyond a reasonable doubt; (3) ineffective assistance of

trial counsel based on Georges' (a) failures to adequately prepare for trial "by investigating

matters," impeach Mrs. Camper and object to the People's summation, as well as (b)

unfamiliarity with sentencing law; and (4) ineffective assistance of appellate counsel based on

Sayegh's flawed arguments and failures to (a) obtain, investigate and challenge the search

warrants for Petitioner's home and car, (b) move to reconstruct the *Huntley* hearing transcript, (c)

pursue additional meritorious arguments, including the People's submission of false documents

to the grand jury, and (d) understand appellate procedure. (Docket No. 2).  Petitioner then wrote

to the Court on March 22, 2022, requesting that, rather than replying to Respondent's opposition,

he be permitted to stay his Petition to prosecute the 440.10 Motion raising the following

additional arguments: (1) prosecutorial misconduct by knowingly offering false testimony and

documents to the grand jury and at trial; (2) judicial misconduct based on bias against Petitioner

and sanctioning the aforementioned prosecutorial misconduct; (3) actual innocence based on

newly-discovered evidence; and (4) ineffective assistance of trial counsel based on Georges'

failures to (a) investigate and challenge the legality of Petitioner's arrest and law enforcement's

---

[4] A *pro se* prisoner's papers are deemed filed at the time he or she delivers them to prison authorities for forwarding to the court clerk. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *see also Walker v. Jastremski*, 430 F.3d 560 (2d Cir. 2005) (analyzing the *Houston* "prison mailbox rule"). Petitioner certified that his Petition was delivered to the prison authorities for mailing on May 27, 2021. (Docket No. 2 at 24). Accordingly, because the timeliness of the Petition is not challenged, the Court adopts Petitioner's dates for this filing and all other filings discussed herein.

searches of his home, car and cell phone records, (b) properly cross-examine and impeach various prosecution witnesses, including Mrs. Camper, (c) call Mrs. Murray as an alibi witness, (d) object to various protective orders, and (e) obtain camera footage from Mr. and Mrs. Camper's apartment building in Peekskill. (Docket Nos. 23; 23-3 at 8-52; *see also* Docket No. 17 at 3). Construing this *pro se* filing liberally, *see, e.g.*, *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996), the Court interprets Petitioner's application as requesting to: (1) stay the Petition so that Petitioner can exhaust these additional claims; and (2) amend his Petition to add them.

## II.  LEGAL STANDARD

### A.  Standard to Stay

In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court clarified the district courts' authority to issue a stay and abeyance of habeas corpus petitions in limited circumstances. The purpose of the stay and abeyance mechanism is "to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to the federal court for review of his perfected petition." 544 U.S. at 271–72. Thus, as a preliminary matter, only a "mixed petition," one that contains both exhausted and unexhausted claims, may be stayed and held in abeyance. *See id.* at 278; *accord Ortiz v. Heath*, No. 10–CV–1492 (KAM), 2011 WL 1331509, at *14 (E.D.N.Y. Apr. 6, 2011) (stay and abeyance procedure only applies to mixed petitions).[5] Additionally, a stay and abeyance may only be granted if: "(1) good cause exists for the petitioner's failure to exhaust his claims in state court; (2) the unexhausted claims are not

---

[5] If Petitioner does not have access to cases cited herein that are available only by electronic database, then he may request copies from Respondent's counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the pro se litigant with copies of such unpublished cases and other authorities as are cited in a decision of the Court and were not previously cited by any party.").

'plainly meritless'[;] and (3) the petitioner has not engaged in intentionally dilatory litigation tactics." *Ortiz*, 2011 WL 1331509, at *14 (citing *Rhines*, 544 U.S. at 277–78).

**B.  Standard to Amend**

Rule 15 of the Federal Rules of Civil Procedure ("Rule 15"), made applicable to habeas proceedings by 28 U.S.C. § 2242, Rule 81(a)(2) of the Federal Rules of Civil Procedure and Habeas Corpus Rule 11, "allows pleading amendments with 'leave of court' any time during a proceeding." *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (quoting Fed. R. Civ. P. 15(a)).  However, this rule is limited by the one-year statute of limitations period set forth by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2244(d)(1); *Mayle*, 545 U.S. at 654.  Therefore, if an amendment is filed after the statute of limitations period has expired, a new claim is untimely unless it relates back to the claims in the original, timely petition. *Mayle*, 545 U.S. at 655 (citing Fed. R. Civ. P. 15(c)(2)).  An amendment relates back to the original petition if it asserts new grounds for relief based on the same conduct, transactions or occurrences as those claims in the initial petition. *See Landri v. Smith*, 14-cv-9233(NSR) (JCM), 2016 WL 828139, at *3 (S.D.N.Y. Feb. 29, 2016) (citing *Pierre v. Ercole*, 607 F. Supp. 2d 605, 608 (S.D.N.Y. 2009)).

In calculating the AEDPA one-year statute of limitations, the Court tolls days during the pendency of a petitioner's collateral attack of his or her conviction in a state court proceeding. *See* 28 U.S.C. § 2244(d)(2).  This is consistent with the requirement that a petitioner must exhaust state remedies prior to seeking federal habeas relief. *See Jones v. Keane*, 329 F.3d 290, 294 (2d Cir. 2003) (citing 28 U.S.C. § 2254(b)(1)(A)).  Furthermore, leave to amend should be denied when the proposed new claim would be futile, either because it fails to comply with the aforementioned procedural requirements or it lacks merit. *See, e.g.*, *Ortiz*, 2011 WL 1331509, at *14; *Hoover v. Senkowski*, No. 00 CV 2662(SJ), 2003 WL 21313726, at *11–12 (E.D.N.Y. May

24, 2003); *see also Mayle*, 545 U.S. at 656 (noting that Habeas Corpus Rule 4 mandates that a Court "'summarily dismiss'" a petition if "'it plainly appears . . . that the petitioner is not entitled to relief in the district court'") (quoting Habeas Corpus Rule 4).

## III.  DISCUSSION

With the exception of his ineffective assistance argument based on Georges' failure to properly cross-examine Mrs. Camper,[6] Petitioner's proposed claims are not included in the Petition. (*See* Docket No. 2).  Thus, although Petitioner does not seek leave to amend at this juncture, the Court assumes that Petitioner will do so after exhausting his claims in the New York C.P.L. § 440.10 proceeding he already initiated. (*See* Docket No. 23 at 1).  Accordingly, the Court will consider whether Petitioner should be granted leave to amend his Petition under Rule 15, as well as whether his Petition should be stayed and held in abeyance.

## A.  Leave to Amend

In order for Petitioner's proposed new claims to be timely, they must be filed within one year of his conviction, as calculated with applicable tolling periods, or relate back to claims asserted in his original, timely Petition for relief.  Based on the Court's calculations and a thorough review of the claims in the Petition, the Court finds that several of Petitioner's proposed new claims are untimely.  Petitioner's conviction became final on May 20, 2019, 90 days after the Court of Appeals denied Petitioner leave to appeal his conviction and the time to seek *certiorari* from the Supreme Court of the United States expired. *See Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).

---

[6] Petitioner's ineffective assistance claim based on failure to impeach Mrs. Camper using her confession tape is addressed in "Ground Three" of the Petition. (*Compare* Docket No. 2 at 13, *with* Docket No. 23-3 at 52).  As "it would be pointless to add this claim because it is already contained in the [P]etition," the Court denies Petitioner's motion to amend with respect to this claim. *See Jones v. Miller*, 14 Civ. 9774 (PAC)(GWG), 2016 WL 8471357, at *9 n.6 (S.D.N.Y. May 17, 2016), *report and recommendation adopted*, 2017 WL 980335 (S.D.N.Y. Mar. 9, 2017); *see also Gabbidon v. Lee*, 18 Civ. 2248 (VB)(JCM), 2020 WL 2129391, at *7 (S.D.N.Y. May 5, 2020).

Petitioner filed a *coram nobis* petition on October 11, 2019, 144 days after his conviction

became final, tolling the limitations period during the pendency of that motion. 28 U.S.C. §

2244(d)(2).  The tolling ceased on November 30, 2020, when the Court of Appeals denied his

leave application. *See Smith v. McGinnis*, 208 F.3d 13, 15–17 (2d Cir. 2000) (calculating tolling

under AEDPA); *Spells v. Lee*, No. 11-CV-1680 (KAM)(JMA), 2012 WL 3027865, at *3

(E.D.N.Y. July 23, 2012) (tolling the one-year statute of limitations between the date petitioner

filed his *coram nobis* motion and the date on which the Court of Appeals denied leave to appeal

the denial of the motion).  The limitations period accrued for another 178 days, until Petitioner

filed his Petition on May 27, 2021.  Thus, by the time Petitioner filed his Petition, he had accrued

a total of 322 days, and only had 43 days left to file.  Thus, Petitioner's statute of limitations

expired on July 9, 2021.

Although Petitioner's original Petition is timely, he raised his proposed claims long after

the one-year statute of limitations had expired under the AEDPA.  Petitioner sought leave to add

these claims on March 22, 2022.  Petitioner's proposed claims are, therefore, futile unless they

"relate back" to the claims asserted in his original Petition. *See Pierre*, 607 F. Supp. 2d at 607.  A

proposed claim "relates back" to the original petition when it arises "out of the same 'conduct,

transaction, or occurrence' as a claim set out in the original petition." *Id.* at 608 (quoting Fed. R.

Civ. P. 15(c)(1)(B)); *see also Mayle*, 545 U.S. at 648.  This means that "[s]o long as the original

and amended petitions state claims that are tied to a common core of operative facts, relation

back will be in order." *Mayle*, 545 U.S. at 664.  However, "[a]n amended habeas petition . . .

does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new

ground for relief supported by facts that differ in both time and type from those the original

pleading set forth." *Id.* at 650.  Indeed, "courts find relation back only when underlying claims

are the same, . . . when facts and legal theories are intertwined, . . . or when one theory clarifies and supplements the other." *Soler v. United States*, Nos. 10 Civ. 04342(RJH)(MHD), 05 Cr. 00165(RJH), 2010 WL 5173858, at *4 (S.D.N.Y. Dec. 20, 2010) (collecting cases); *see also Cordova-Diaz v. Brown*, No. 10 Civ. 5133(CM)(KNF), 2011 WL 723575, at *5 (S.D.N.Y. Feb. 8, 2011) ("Proposed new claims do not relate back to the claims in the original petition simply because they concern the same trial, conviction or sentence."). The "pertinent inquiry . . . is whether the original [petition] gave the defendant fair notice of the newly alleged claims." *See Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 815 (2d Cir. 2000) (quoting *Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 (2d Cir. 1998)) (internal quotations omitted).

Here, Petitioner's proposed actual innocence claim, as well as several of his judicial misconduct and new ineffective assistance arguments, do not relate back to the claims in the original Petition. Petitioner's alleged innocence based on newly-discovered evidence in the form of an alibi from his wife, (Docket No. 23-3 at 31-32), is "supported by facts that differ entirely in both time and type from the facts needed to support the claims" in the Petition—which does not mention such an alibi or actual innocence. *See Cordova-Diaz*, 2011 WL 723575, at *5; *see also Soler*, 2010 WL 5173858, at *4. Petitioner's judicial misconduct claim based on bias and Judge Zambelli's alleged misconduct in an unrelated case also does not relate back because the Petition does not plead judicial bias or reference any of the evidence used to support it in the 440.10 Motion. *See Aguiar v. United States*, No. 01 CV 4117 (SJ), 2010 WL 1608113, at *4 (E.D.N.Y. Apr. 16, 2010) (finding no relation back where "the Petition did not allege any judicial misconduct"). Similarly, with respect to three of Petitioner's new ineffective assistance claims, although the Petition does set forth ineffective assistance as a ground for relief, that is insufficient for relation back because much of "the behavior of which petitioner complains in his

11

proposed amendment is [not] factually related to the behavior of which he complains in his original, timely petition." *See Peralta v. Connelly*, No. 06 Civ. 5360(DAB)(MHD), 2008 WL 8050791, at *9 (S.D.N.Y. Apr. 18, 2008), *report and recommendation adopted*, 2010 WL 3219326 (S.D.N.Y. Aug. 11, 2010); *see also Jenkins v. Graham*, No. 06 Civ. 10200(CM)(JCF), 2009 WL 1119383, at *2 (S.D.N.Y. Apr. 23, 2009) ("[A] new ineffective assistance claim does not relate back to an earlier one that relied on a different type of attorney malfeasance."). This includes Petitioner's ineffective assistance claims premised on the failure to offer the above alibi at trial, object to state court protective orders, and obtain camera footage, (Docket No. 23-3 at 48-51), as they are supported by facts entirely unrelated to the claims in the original Petition. Because these grounds for relief are time-barred under AEDPA,[7] amending the Petition to include them would be futile.

However, the remainder of Petitioner's new claims relate back to the original Petition. Petitioner's ineffective assistance claim based on the pretrial proceedings relates back because it draws from "a common core of operative facts" that are clearly set forth in the Petition. *See Mayle*, 545 U.S. at 664. Indeed, trial counsel's alleged failure to investigate and challenge the

---

[7] To the extent Petitioner maintains that any procedural bar should be excused because he is actually innocent, that argument fails as well. A claim of actual innocence is a "gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). To obtain such relief, a petitioner must establish that, "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Moreover, "a gateway claim requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* (quoting *Schlup*, 513 U.S. at 324). Here, Petitioner does not present any *new* evidence "to show that it is more likely than not that no reasonable juror would have convicted him" "in light of the new evidence." *See Schlup*, 513 U.S. at 327, 329. Rather, as Respondent notes, the same alibi forming the basis of this claim was presented by another witness at trial, and rejected by the jury. (Docket No. 24-1 at 6; *see also* Docket No. 19-6 at 118:21-119:22). Accordingly, this claim does not provide a basis upon which to excuse the procedural bar. *Cf. White v. Keane*, 51 F. Supp. 2d 495, 503 (S.D.N.Y. 1999) (rejecting actual innocence claim based on alibi where same testimony was introduced at trial). Furthermore, any freestanding actual innocence claim Petitioner seeks to bring in this habeas action is not cognizable, and thus, meritless, because the Supreme Court has yet to hold that such a claim implicates a federal constitutional right. *See Herrera*, 506 U.S. at 404–05; *Ortiz*, 2011 WL 1331509, at *13–14.

legality of the search warrants relies on the very same omissions by appellate counsel noted in the original Petition. *See, e.g.*, *Scott v. Phillips*, No. 05–CV–0142 (CBA), 2007 WL 2746905, at *6 (E.D.N.Y. Sept. 19, 2007) (finding that alleged ineffective assistance of appellate counsel based on failure to raise trial counsel's ineffectiveness for failing to investigate and failing to call an expert witness related back to claims of ineffective trial counsel based on the same omissions); *Serrano v. Burge*, No. 03CIV8639(RMB)(RLE), 2005 WL 2063765, at *4 (S.D.N.Y. Aug. 22, 2005), *report and recommendation adopted*, 2005 WL 2170362 (S.D.N.Y. Sept. 8, 2005) ("Although the ineffective assistance of appellate counsel claim is based on a new theory of relief, it arises from the same facts as the original habeas petition."). Thus, this ineffective assistance claim is timely.

Moreover, although it is a closer call, construing the Petition liberally, Petitioner's new ineffective assistance claims based on Georges' failures to (a) challenge the legality of Petitioner's arrest and the search of his cell phone information, and (b) impeach prosecution witnesses, are also sufficiently similar in "time and type" to Petitioner's original ineffective assistance claims, to apply Rule 15. *See Mayle*, 545 U.S. at 660. Indeed, the Petition seeks relief based on counsel's failures to attack investigative search warrants and impeach Mrs. Camper during trial. (Docket No. 2 at 13, 16-17). Petitioner's 440.10 Motion argues that, just like Mrs. Camper, additional prosecution witnesses testified inconsistently with their previous statements or other records accessible to trial counsel, such that counsel should have objected or raised these issues on cross-examination. (Docket No. 23-3 at 13-25). Courts within this Circuit have found that proposed claims based on related constitutional violations grounded in facts that are similar to those in the original petition, qualify for relation back under *Mayle*. *See, e.g.*, *Lewis v. Comm'r of Correction*, No. 3:03-cv-196 (CSH), 2013 WL 617034, at *5 (D. Conn. Feb. 19, 2013)

(finding "it plain that all failures to disclose information" in original and amended petition arose from same operative facts because they constituted "the prosecutors' asserted series of failures to disclose exculpatory or impeaching information"); *Player v. Artus*, No. 06–CV–2764 (JG), 2008 WL 324246, at *1–2 (E.D.N.Y. Feb. 06, 2008) (holding that ineffective assistance claim regarding jury charges and prosecutorial misconduct related to amendments for the same claims regarding different jury charges and instances of prosecutorial misconduct). Because the rest of Petitioner's proposed prosecutorial and judicial misconduct claims arise out of these witnesses' same misstatements—as well as the same allegedly false evidence noted in the original Petition—they arguably relate back, as well. *See Torres v. Girdich*, No. 04 Civ. 1512(GWG), 2006 WL 1230328, at *8, *11 (S.D.N.Y. May 9, 2006) (permitting relation back where lack of limiting instruction noted in original petition formed the basis of new ineffective assistance claim regarding same testimony). Thus, the Court assumes for purposes of Petitioner's motion to amend that these claims are timely.

## B.  Motion for a Stay

Even assuming, without deciding, that Petitioner's timely new claims are not otherwise futile, there is no basis for granting Petitioner a stay. As Petitioner recognizes, the above new claims (with the exception of his ineffective assistance claim based on Mrs. Camper's testimony)[8] are unexhausted. (Docket No. 25 at 2-3). A court cannot grant a writ of habeas corpus unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Moreover, "federal district courts may not adjudicate . . . petitions containing both exhausted and unexhausted claims." *Rhines*, 544 U.S. at 273 (citing *Rose v. Lundy*, 455 U.S. 509 (1982)). Thus, courts evaluating motions to amend to add unexhausted

---

[8] *See supra* n.6.

claims have found that such claims are futile absent a basis for granting the petitioner a stay to exhaust the claims in state court. *See, e.g., Spells*, 2012 WL 3027865, at \*6; *Ramdeo v. Phillips*, No. 04-CV-1157(SLT), 2006 WL 297462, at \*4 (E.D.N.Y. Feb. 8, 2006).

A stay is only warranted when a petitioner can show "good cause" for his failure to exhaust his claims. *Rhines*, 544 U.S. at 277. Generally, "in order to show good cause, a petitioner must, at the very least, demonstrate that the failure to exhaust is attributable to 'external factors,' *i.e.*, that the reasons for the failure do not rest with the petitioner." *Clendinen v. Unger*, No. 05 CIV. 7657(PKC), 2006 WL 2465176, at \*4 (S.D.N.Y. Aug. 22, 2006) (quoting *Ramdeo*, 2006 WL 297462, at \*6)). Petitioner's explanation for this failure does not meet this standard. Petitioner argues that he did not exhaust the above claims because he needed to obtain various transcripts from his criminal proceedings, and his *Huntley* hearing was not fully transcribed. (Docket No. 25). However, because these records are unnecessary to succeed on a New York C.P.L. 440.10 motion, such "delay resulting from this pursuit does not amount to good cause." *See Davidson v. Capra*, 15-CV-9840 (LGS) (JLC), 2016 WL 4719685, at \*3 (S.D.N.Y. Sept. 9, 2016), *objections overruled*, 2016 WL 6248449 (S.D.N.Y. Oct. 26, 2016); *see also Taylor v. Poole*, No. 07 Civ. 6318 (RJH)(GWG), 2009 WL 2634724, at \*331 (S.D.N.Y. Aug. 27, 2009) *report and recommendation adopted*, 2011 WL 3809887 (S.D.N.Y. Aug. 26, 2011) ("[W]e cannot conclude that [petitioner] has demonstrated 'good cause' merely because he has harbored an incorrect belief that he was required to have transcript citations in his submission to the Appellate Division.").

Furthermore, a stay is inappropriate because Petitioner had knowledge of the alleged misconduct giving rise to his timely, new claims by the end of his trial, or at the latest, during his direct appeal, well-before he brought his Petition. Courts are loathe to grant a stay when the

petitioner was aware of the grounds for his unexhausted claims long before coming to federal court. *See, e.g.*, *Holguin v. Lee*, No. 13 Civ. 1492 (LGS)(JLC), 2013 WL 3344070, at *2 (S.D.N.Y. July 3, 2013) (finding stay inappropriate where petitioner was "was clearly aware of [the underlying] facts at the conclusion of his trial"); *Spells*, 2012 WL 3027865, at *6 (denying stay where petitioner was aware of underlying facts for more than two and a half years before filing federal habeas petition); *Scott*, 2007 WL 2746905, at *7 (denying stay where petitioner "was aware . . . when he filed his initial habeas petition[] of the underlying facts of [his] claim"). Indeed, as noted above, many of the facts underlying Petitioner's timely, new claims are pled in the original Petition, but Petitioner simply neglected to assert them as grounds for the additional constitutional violations he is attempting to pursue now.  Petitioner was obviously present at the proceedings for his own criminal action, and was given access to any sealed pretrial records to which he previously lacked access in 2015. (Docket No. 18-15 at 3).  Moreover, the mere fact that the *Huntley* transcript is incomplete is immaterial because, as Petitioner concedes, the relevant portions of the confession tapes on which several of his new claims are based were played in open court during that hearing. (Docket No. 25 at 2).

Finally, to the extent Petitioner argues that his appellate counsel's ineffectiveness excuses his failure to raise these new claims on direct appeal, (*see id.*), that does not explain why Petitioner chose to file these claims in this Court before attempting to exhaust them via a New York C.P.L. § 440.10 motion. *See Davidson*, 2016 WL 4719685, at *345.  Indeed, "[w]ere the Court to grant a stay simply on the basis that [Petitioner] did not bring the claim earlier, despite admittedly being previously aware of the facts supporting the claim, it would be defeating AEDPA's twin purposes of encouraging finality and increasing the incentives for petitioners to exhaust all claims prior to filing habeas petitions in federal court." *Spells*, 2012 WL 3027865, at

16

*6 (quoting *Scott*, 2007 WL 2746905, at *7).  The Court declines to interfere with these

objectives.

Because there is no basis for granting Petitioner a stay, his unexhausted claims are futile.

*See Ramdeo,* 2006 WL 297462, at *7; *King v. Phillips*, No. 03-CV-6073(NGG), 2006 WL

3358996, at *4 (E.D.N.Y. Oct. 3, 2006) ("Since this Court finds that petitioner has not

demonstrated 'good cause' for granting a stay of the instant habeas proceedings, it would be

futile to grant him leave to amend his petition to the extent that he seeks to add unexhausted

claims.").  Under such circumstances, staying the Petition to allow Petitioner to exhaust his

proposed claims would constitute an abuse of discretion.[9] *See Ortiz*, 2011 WL 1331509, at *15.

## IV.  CONCLUSION

For the foregoing reasons, Petitioner's application for a stay is denied.  The Clerk of

Court is respectfully requested to terminate the pending motion (Docket No. 23), and to mail a

copy of this Order to the *pro se* Petitioner.  Petitioner is directed to file his reply to Respondent's

opposition to this original Petition, if any, by July 15, 2022.


Dated:    June 13, 2022
          White Plains, New York


                                        **SO ORDERED:**

                                        _Judith C. McCarthy_
                                        JUDITH C. McCARTHY
                                        United States Magistrate Judge

---

[9] Although "there is no indication that" Petitioner "engaged in intentionally dilatory tactics," *see Rhines*, 544 U.S. at 278, the absence of this factor does not preclude the Court from denying Petitioner's motion to stay. *See Ortiz*, 2011 WL 1331509, at *15.