UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN MURRAY,

                              Petitioner,

     v.

JOSEPH NOETH, *Superintendent,*
*Attica Correctional Facility*,

                              Respondent.

No. 21-CV-5343 (KMK)

ORDER ADOPTING
REPORT & RECOMMENDATION

---

Appearances:

John Murray
Ossining, NY
*Pro Se Petitioner*

Joseph J. Carmody, Esq.
Daniel H. Davis, Esq.
Westchester County District Attorney's Office
White Plains, NY
*Counsel for Respondent*

KENNETH M. KARAS, United States District Judge:

     John Murray ("Petitioner"), proceeding pro se, filed a Petition for a Writ of Habeas

Corpus (the "Petition"), pursuant to 28 U.S.C. § 2254, challenging his April 17, 2014 conviction

and subsequent sentence. (*See generally* Pet. For Writ of Habeas Corpus ("Pet.") (Dkt. No. 2).)

Following a jury trial in New York State Supreme Court, Westchester County, Petitioner was

found guilty of First Degree Murder and Second Degree Criminal Possession of a Weapon. (*See*

Dkt. No. 19-6 at 296.) Petitioner was sentenced to life imprisonment without parole for his First

Degree murder conviction, and he was sentenced to a concurrent determinate term of fifteen

years for his Second Degree Criminal Possession of a Weapon conviction. (*See* Dkt. No. 19-7

at 12.)  Petitioner is currently serving his sentence at Sing Sing Correctional Facility in

Westchester County, New York.  (*See* Dkt.)

On June 15, 2021, Petitioner filed this Habeas Petition.  (Dkt. No. 2.)  On August 2,

2021, the Court referred the Petition to Magistrate Judge Judith C. McCarthy.  (*See* Dkt. No. 8.)

In a Report and Recommendation ("R&R") dated March 4, 2024, Judge McCarthy recommended

that the Petition be denied in its entirety.  (*See* R&R (Dkt. No. 32).)  After he received an

extension of time to file, (*see* Dkt. No. 33), Petitioner's Objections to the R&R were docketed on

April 18, 2024, (*see* Pet'r's Obj's to R&R ("Obj.") (Dkt. No. 35)).[1]  Respondent has not

responded to the Objections.  (*See generally* Dkt.)  After a review of the R&R and Petitioner's

Objections, the Court adopts the result recommended in the R&R and denies the Petition.

## I. Background

The factual and procedural background of this case are set forth in Judge McCarthy's

thorough R&R, and the Court assumes the Parties' familiarity therewith.  (*See* R&R 1–12.)  The

Court here summarizes only the facts relevant to addressing Petitioner's Objections to the R&R.

### A.  Factual Background

#### 1. The Crime

On October 3, 2012, Petitioner fatally shot Terry Camper ("Terry") in Peekskill, New

York, after conspiring with Terry's wife, Beatrice Camper ("Beatrice"), to do so.  (R&R 1–2.)

Briefly, Petitioner and Beatrice had a complicated romantic relationship, which they eventually

rekindled in 2011 as Beatrice and Terry's marriage had soured due to financial hardship.  (*Id.* at

2.)  Eventually, Petitioner and Beatrice agreed to start a business and a new life together once he

was released from prison.  (*Id.* at 3.)  To do so, the two devised a plan to kill Terry and collect

---

[1] A duplicate copy of Petitioner's Objections was docketed on April 19, 2024.  (*See* Dkt.
No. 34.)

the payout from his life insurance policy, the value of which Petitioner had instructed Beatrice to surreptitiously raise. (*Id.*)

The morning of the murder, Terry followed his usual work routine as a cab driver, and Petitioner called him for a ride. (*Id.*) Shortly after Terry picked up Petitioner, individuals in the area reported hearing "a muffled kind of cracking noise." (*Id.* at 4.) Petitioner called Beatrice and informed her that "[i]t's done." (*Id.*) An hour later, Terry was found dead with a gunshot wound behind his left ear. (*Id.*)

Petitioner was charged with First Degree Murder, Second Degree Murder, and Second Degree Criminal Possession of a weapon on November 14, 2012. (*Id.* at 6 (citing Dkt. No. 17 at 2).)

### 2. Pretrial Motions

Before trial, Petitioner moved to suppress statements that he made to the police prior to his arrest. (*Id.*) In a pre-trial hearing, several police officers testified that they went to Petitioner's house just after midnight on October 4, 2012. (*Id.*) They testified that Petitioner voluntarily accompanied them to the police station for an interview. (*Id.* at 6–7.) During the ride, Petitioner was not restrained and did not speak. (*Id.* at 7.)

Prior to beginning the interview, police gave Petitioner a *Miranda* warning, which was both recorded and confirmed in writing. (*Id.*) During the interview, Petitioner denied both that he was in Peekskill on October 3, 2012, and that he possessed an additional phone. (*Id.*) Petitioner then invoked his right to counsel, at which point the police ceased questioning and concluded the interview. (*Id.*) Though Petitioner was allowed to leave, police arrested him later that day. (*Id.*) Following that arrest, but before giving Petitioner a *Miranda* warning, Sergeant Raymond Henderlong ("Sergeant Henderlong") informed him that his girlfriend was arrested, and Petitioner responded that he did not have a girlfriend. (*Id.*)

3

The state court later denied Petitioner's motion to suppress the statements he made at the police station before his arrest because the court found that Petitioner was given a proper *Miranda* warning.  (*Id.*)  However, it also granted Petitioner's motion to suppress statements he gave at the police station after his arrest, given that Sergeant Henderlong did not give Petitioner a *Miranda* warning prior to questioning him, and his statement about the girlfriend was likely to elicit a reaction from Petitioner.  (*Id.*)  Specifically, the court held that Petitioner's statements were "not spontaneous within the meaning of the law" and therefore suppressed those statements.  (*Id.* (quoting *People v. Murray*, No. 12-1281, 2014 WL 12519936, at *4 (N.Y. Sup. Ct. Jan. 23, 2014)).)

### 3. The Trial, Verdict, and Sentencing

Trial began on April 3, 2014, and the jury returned a guilty verdict on both counts on April 17, 2014.  (*Id.* at 7–8.)[2]  Petitioner was convicted of one count of Murder in the First Degree and Criminal Possession of a Weapon in the Second Degree.  (*Id.* at 8.)  Petitioner was sentenced on September 30, 2014.  (*Id.*)  For the First Degree Murder count, Petitioner, who had previously been convicted of a violent felony, was sentenced to life imprisonment without parole.  (*Id.*)  For the Second Degree Criminal Possession of a Weapon count, Petitioner was sentenced to a concurrent determinate term of fifteen years.  (*Id.*)

### B.  Procedural History

#### 1. New York Criminal Procedural Law §330.30 Motion and Sentence

Petitioner's trial counsel filed a motion to set aside the verdict pursuant to New York Criminal Procedure Law § 330.30 ("330.30 Motion") on June 10, 2014.  (*Id.*)  In the 330.30 Motion, counsel raised several issues, arguing that: (1) the prosecution improperly introduced

---

[2] On consent, the Second Degree Murder charge was not presented to the jury.  (R&R 8 n.7.)

Petitioner's prior murder conviction to the grand jury; (2) the trial court's *Sandoval* ruling was

unduly prejudicial; (3) the trial court erred in various evidentiary rulings, including (i) refusing

Petitioner access to Sergeant Henderlong's personnel records and the ability to cross-examine

him on his disciplinary history, (ii) permitting references to Petitioner's prior incarceration,

(iii) allowing expert testimony from Detective Thomas Burke on the "ultimate issue" in the case,

and (iv) instructing the jury about a non-existent agreement between the prosecution and defense

pertaining to playing prison phone calls between Petitioner and Beatrice; (4) the prosecution both

(i) relied on facts not in evidence and (ii) made prejudicial comments "in vouching for her

witness;" (5) there was legally insufficient evidence to support Petitioner's convictions;

(6) Beatrice's testimony was not supported by sufficient corroborating evidence; (7) Petitioner

was actually innocent; and (8) the prosecution knowingly used false evidence at trial.  (*Id.* at

8–9.)

       Shortly thereafter, Petitioner filed a supplemental motion on June 20, 2014.  (*Id.* at 9.)  In

his supplemental motion, Petitioner expounded on his claims that he was actually innocent and

that the prosecution presented false evidence to the jury.  (*Id.*)  Additionally, he raised two new

grounds for relief, asserting that: (1) the evidence did not support his weapons-possession

conviction; and (2) the prosecution committed a *Batson* violation by using preemptory

challenges to strike potential Black female jurors.  (*Id.*)  The Prosecution opposed the motion on

July 2, 2014.  (*Id.*)

       On August 26, 2014, the trial court denied Petitioner's 330.30 Motion.  (*Id.* (citing

*People v. Murray*, No. 12-1281, 2014 WL 12519935 (N.Y. Sup. Ct. Aug. 27, 2014)).)  The court

found that four of the claims were not cognizable as they were not preserved for appellate

review.  (*Id.*)  The court concluded the remaining claims were meritless, and accordingly, denied

them.  (*Id.* at 9–10.)  Petitioner subsequently moved to reargue the 330.30 Motion, contending

that some claims were preserved for appellate review.  (*Id.* at 10.)  On September 17, 2014, the

prosecution opposed the re-argument motion, which the trial court ultimately denied on January

6, 2015.  (*Id.*)

        2. Direct Appeal

Petitioner then appealed his convictions and the denial of his 330.30 Motion to the

Supreme Court of the State of New York, Appellate Division, Second Department ("Second

Department") on October 21, 2014.  (*Id.* at 10.)  Following lengthy motion practice regarding

Petitioner's assigned appellate counsel, on November 11, 2016, appellate counsel filed a brief,

which offered substantive arguments relying on an exhibit that was not part of the record.  (*Id.*)

After the State moved to strike the brief's references outside the record, which the Second

Department granted, Petitioner's appellate counsel submitted an amended brief on March 5,

2017.  (*Id.*)  In Petitioner's amended brief, counsel argued that: (1) by denying Petitioner access

to Sergeant Henderlong's personnel records and the ability to cross-examine him on the subject,

the trial court violated the Confrontation Clause of the Sixth Amendment; and (2) Petitioner's

grand jury presentation was defective.  (*Id.*)  The State opposed Petitioner's appeal on March 15,

2017.  (*Id.*)

On March 24, 2017, Petitioner moved to proceed pro se for a second time.  (*Id.*)

Although the Second Department denied the motion, it granted Petitioner leave to file a pro se

supplemental brief.  (*Id.*)  Petitioner filed his pro se supplemental brief on December 4, 2017,

arguing that: (1) there was legally insufficient evidence to support his convictions, and that the

jury's verdict was against the weight of the evidence; and (2) he was denied effective assistance

of trial counsel because (i) trial counsel failed to object to "misstated testimony" by the

prosecution, (ii) the prosecution became an "unsworn witness," and (iii) trial counsel failed to "properly prepare for trial by investigating matters" and "taking time for reflection upon [the] prior witness's testimony."  (*Id.* at 10–11 (quoting Res.'s Mem. of Law in Opp'n to Pet. For Writ of Habeas Corpus ("Res.'s Opp'n") Ex. 18 at 6 (Dkt. No. 18-18)).)  The State subsequently filed a supplemental brief in response.  (*Id.* at 11.)

In a July 15, 2018 Decision and Order, the Second Department affirmed Petitioner's conviction in its entirety.  (*Id.* (citing *People v. Murray*, 82 N.Y.S.3d 455 (App. Div. 2018)).)  The New York Court of Appeals ("Court of Appeals") summarily denied Petitioner's request for leave to appeal on February 19, 2019.  (*Id.* (citing *People v. Murray*, 122 N.E.3d 1110 (Table) (N.Y. 2019)).)

### 3. Coram Nobis Application

Proceeding pro se, Petitioner filed for a petition for a writ of coram nobis on October 11, 2019.  (*Id.*)  Petitioner asserted ineffective assistance of appellate counsel, arguing that appellate counsel failed to: (1) perform due diligence before submitting his brief, which was "hopelessly flawed;" (2) raise arguments that Petitioner later raised in his pro se supplemental brief; and (3) communicate with Petitioner, whom he "totally abandon[ed]."  (Res.'s Opp'n. Ex. 22 at 6–10, 12–16 (Dkt. No. 18-22).)  The State opposed the application, which the Second Department denied on August 12, 2020.  (R&R 11 (citing *People v. Murray*, 126 N.Y.S.3d 683 (App. Div. 2020)).)  Petitioner then sought leave to appeal to the Court of Appeals, which denied that request on November 30, 2020.  (*Id.* (citing *People v. Murray*, 159 N.E.3d 1106 (Table) (N.Y. 2020)).)

4. Habeas Petition

The instant Petition, which is dated May 27, 2021, was docketed on June 15, 2021. (*See* Pet.)  Respondent filed an Opposition on December 14, 2021.  (Res.'s Opp'n.)  Petitioner filed a reply on July 18, 2022.  (*See* Dkt. No. 27.)

Judge McCarthy issued the R&R on March 4, 2024, recommending that this Court deny Petitioner's request for relief and dismiss the Petition in its entirety.  (R&R 1.)  Following an extension, Petitioner filed his Objections on April 18, 2024.  (*See* Obj.)

## II. Discussion

### A.  Standard of Review

#### 1.  Review of a Magistrate Judge's Report and Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge."  28 U.S.C. § 636(b)(1).  Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and recommendation.  The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin [fourteen] days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant to Federal Rules of Civil Procedure 5(b)(2)(C)–(F), *see* Fed. R. Civ. P. 6(d), for a total of seventeen days, *see* Fed. R. Civ. P. 6(a)(1).

Where a party submits timely objections to a report and recommendation, as Petitioner has done here, the Court reviews de novo the parts of the report and recommendation to which the party objected.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions

8

set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)); *see also Mack v. Collado*, No. 21-CV-8541, 2023 WL 6200170, at *2 (S.D.N.Y. Sept. 22, 2023) (same).

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser standard than other parties." (italics omitted)); *see also Alfonso v. Lamanna*, No. 18-CV-4607, 2022 WL 14061783, at *4 (S.D.N.Y. Oct. 24, 2022) (same). Because Petitioner is proceeding pro se, the Court construes his pleadings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (italics omitted) (quotation marks omitted); *see also Shamilov v. City of New York*, No. 20-CV-10224, 2024 WL 708193, at *2 (S.D.N.Y. Feb. 21, 2024) (same). However, this "does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (quotation marks omitted); *see also Francis v. Johnson & Johnson*, No. 22-CV-3812, 2023 WL 9004775, at *1 (S.D.N.Y. Dec. 28, 2023) (same).

### 2. Habeas Corpus Standard of Review

Petitions for writs of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that a state prisoner may seek habeas corpus relief in federal court "on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). "The writ may not issue for any claim adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the

facts in light of the evidence presented in the State Court proceeding.'" *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)–(2)); *see also Brims v. Collado*, No. 18-CV-6973, 2022 WL 6807545, at *5 (S.D.N.Y. Oct. 11, 2022) (same).  In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("The petitioner carries the burden of proof."); *Gantt v. Miller*, No. 19-CV-2910, 2023 WL 6200870, at *7 (S.D.N.Y. July 28, 2023) ("[E]ven if a state court decision is contrary to . . . federal law, the petitioner still carries the ultimate burden . . . ." (quotation marks omitted)).

A decision is "contrary to" clearly established Federal law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *see also Bowie v. Lee*, No. 13-CV-7317, 2021 WL 6127048, at *8 (S.D.N.Y. Dec. 28, 2021) (same).  A decision is "an unreasonable application of clearly established Federal law" if a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407–08 (alterations adopted) (quotation marks omitted); *see also May v. Griffin*, No. 17-CV-6319, 2021 WL 5450346, at *7 (S.D.N.Y. Nov. 19, 2021) (same).  "Clearly established Federal law for purposes of [Section] 2254(d)(1) includes only the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions.  And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (alteration adopted) (quotation marks omitted); *see also id.* at

420 (noting that a petitioner must show a state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement" (quotation marks omitted)); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quotation marks omitted); *see also Jones v. Cronin*, No. 20-CV-5348, 2022 WL 21853203, at *9 (S.D.N.Y. Apr. 29, 2022) (same), *report and recommendation adopted*, 2023 WL 8643800 (S.D.N.Y. Dec. 14, 2023). Consequently, a federal court must deny a habeas petition in some circumstances even if the court would have reached a conclusion different than the one reached by the state court, because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102; *see also Cullen*, 563 U.S. at 202–03 ("Even if the [Federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the [state court] to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue in the way that the [New York State] Appellate Division did—and indeed we are troubled by the outcome we are constrained to reach—we . . . must defer to the determination made by the state court . . . ." (citations omitted)).

Additionally, under AEDPA, the factual findings of state courts are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1); *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997) ("When

reviewing a habeas petition, the factual findings of the New York Courts are presumed to be

correct." (alteration adopted) (quotation marks omitted)); *see also James v. Dill*, No. 18-CV-932,

2023 WL 1967582, at *5 (S.D.N.Y. Feb. 13, 2023) (same).  The petitioner must rebut this

presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Cotto v.*

*Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (same); *Mack*, 2023 WL 6200170, at *4 (same).

Finally, only federal law claims are cognizable in habeas proceedings.  "[I]t is not the

province of a federal habeas court to reexamine state-court determinations on state-law

questions.  In conducting habeas review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*,

502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof,

a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in

behalf of a person in custody pursuant to the judgment of a State court only on the ground that he

is in custody in violation of the Constitution or laws or treaties of the United States.").

### 3. Procedural Requirements for Habeas Corpus Relief

"Habeas review is an extraordinary remedy," *Bousley v. United States*, 523 U.S. 614, 621

(1998), and a petitioner seeking a writ of habeas corpus must comply with the strict requirements

of AEDPA, *see* 28 U.S.C. § 2254.  Before the Court reviews the merits of a habeas corpus

petition, the Court must determine whether Petitioner complied with the procedural requirements

set forth in 28 U.S.C. §§ 2244 and 2254.

### a. Timeliness

AEDPA imposes upon a petitioner seeking federal habeas relief a one-year statute of

limitations.  *See* 28 U.S.C. § 2244(d)(1).  The statute of limitations is tolled if any state post-

conviction proceedings are pending after the conviction becomes final.  *See* 28 U.S.C.

§ 2254(d)(2).  The limitations period is also subject to equitable tolling, which is warranted only

when a petitioner has shown "(1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstances . . . prevented timely filing." *Finley v. Graham*, No. 12-CV-9055, 2016 WL 47333, at *5 (S.D.N.Y. Jan. 4, 2016) (alterations in original) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

### b. Procedural Bar

A federal court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011) (quotation marks omitted). A judgment is "independent" if the "last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quotation marks omitted). A procedural bar is "adequate . . . if it is based on a rule that is firmly established and regularly followed by the state in question." *Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006) (quotation marks omitted). In "exceptional cases," the "exorbitant application of a generally sound [state procedural] rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002).

### c. Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). To satisfy this requirement, "the prisoner must fairly present his

claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (quotation marks omitted); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the state, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."). This requirement reflects important "notions of comity between the federal and State judicial systems." *Strogov v. Att'y Gen. of State of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999).

There are two components to the exhaustion requirement. *See McCray v. Bennet*, No. 02-CV-839, 2005 WL 3182051, at *7 (S.D.N.Y. Nov. 22, 2005) ("A two-step analysis is used to determine whether a claim has been exhausted . . . ."). First, "a petitioner [must] fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (alterations adopted) (quotation marks omitted); *see also Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (same); *Oliver v. Kirkpatrick*, No. 06-CV-6050, 2012 WL 3113146, at *5 (E.D.N.Y. July 31, 2012) (same). This requirement is satisfied if the claim is presented in a way that is "likely to alert the [state] court[s] to the claim's federal nature," *Carvajal*, 633 F.3d at 104 (quoting *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)), and the state courts are "apprise[d] . . . of both the factual and the legal premises of the federal claims ultimately asserted in the habeas petition," *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005); *see also Bermudez v. Conway*, No. 09-CV-1515, 2012 WL 3779211, at *8 (E.D.N.Y. Aug. 30, 2012) (same). In other words, a state prisoner need not cite "chapter and verse of the Constitution" to satisfy this

14

requirement. *Carvajal*, 633 F.3d at 104 (quotation marks omitted). A petitioner may satisfy this requirement by:

> (a) reliance on pertinent federal cases employing constitutional analysis[;]
> (b) reliance on state cases employing constitutional analysis in like fact situations[;]
> (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution[;] and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* (quotation marks omitted). However, it is "not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citation omitted). Rather, the claims must be made in such a way so as to give the state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Id.* (quotation marks omitted).

"Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim." *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981), *overruled on other grounds*, *Daye v. Att'y Gen.*, 696 F.2d 186, 195 (2d Cir. 1982) (en banc); *see also Pettaway v. Brown*, No. 09-CV-3587, 2010 WL 7800939, at *9 (S.D.N.Y. May 3, 2010) (same), *report and recommendation adopted*, 2011 WL 5104623 (S.D.N.Y. Oct. 26, 2011). In New York, "a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez*, 394 F.3d at 74. If the petitioner fails to exhaust his or her state remedies through the entire appeal process, he or she may still fulfill the exhaustion requirement by collaterally attacking the conviction via available state methods. *See Klein*, 667 F.2d at 282–83 (noting that, "where the petitioner did not utilize all the appellate procedures of the convicting state to present his claim . . . the petitioner must

utilize available state remedies for collateral attack of his conviction in order to satisfy the exhaustion requirement"); *Bernardez v. Bannon*, No. 12-CV-4289, 2016 WL 5660248, at *3 (S.D.N.Y. Sept. 29, 2016).  For example, in New York a defendant may challenge a conviction based on matters not in the record that could not have been raised on direct appeal, *see* N.Y. Crim. Proc. Law § 440.10, but a defendant may not seek collateral review of claims that could have been raised on direct appeal and were not, *see id.* § 440.10(2)(c); *see also O'Kane v. Kirkpatrick*, No. 09-CV-5167, 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("Under New York law, all claims that are record-based must be raised in a direct appeal . . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under [New York Criminal Procedure Law] § 440.10."), *report and recommendation adopted*, 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011).  In addition, New York permits only one application for direct review.  *See Jiminez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) ("[The petitioner] has already taken his one direct appeal [under New York law] . . . . ").  "New York procedural rules bar its state courts from hearing either claims that could have been raised on direct appeal but were not, or claims that were initially raised on appeal but were not presented to the Court of Appeals."  *Sparks v. Burge*, No. 12-CV-8270, 2012 WL 4479250, at *4 (S.D.N.Y. Sept. 18, 2014).

Accordingly, in those situations, a petitioner no longer has any available state court remedy, and the claims are therefore deemed exhausted, but procedurally defaulted.  *See Carvajal*, 633 F.3d at 104 ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we must deem the claim procedurally defaulted." (alteration and quotation marks omitted)); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (noting the

16

reality that deeming an unpresented claim to be exhausted is "cold comfort"). A dismissal of a habeas petition on such grounds is a "disposition . . . on the merits." *Carvajal*, 633 F.3d at 104 (quotation marks omitted). "An applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted claim only by demonstrating 'cause for the default and prejudice' or by showing that he is 'actually innocent' of the crime for which he was convicted." *Id.* (quoting *Aparicio*, 269 F.3d at 90); *see also Dretke v. Haley*, 541 U.S. 386, 388 (2004) (holding that "a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of a cause and prejudice to excuse the default," or showing that the petitioner "is actually innocent of the underlying offense").

### B. Application

Petitioner raised four grounds for habeas relief in his Petition: (1) the trial court violated the Confrontation Clause of the Sixth Amendment by denying him the right to cross-examine Sergeant Henderlong about his personnel files; (2) there was insufficient evidence to support his conviction; (3) ineffective assistance of trial counsel; and (4) ineffective assistance of appellate counsel. (*See* Pet. 3–19.) Judge McCarthy dismissed all of Petitioner's claims. (*See* R&R 19–34.) In his objections, Plaintiff reasserts three of his claims, including that: (1) there was insufficient evidence to support his conviction, (*see* Obj. 4–10); (2) his Confrontation Clause rights were violated, (*see id.* 10–12); and (3) he received ineffective assistance of appellate counsel, (*see id.* 13–14). The Court addresses each of Petitioner's objections to Judge McCarthy's conclusions in turn.

### 1. Sufficiency of the Evidence

Petitioner first objects to Judge McCarthy's conclusion that there was sufficient evidence to support his convictions. (Obj. 4–10.) This Court agrees with Judge McCarthy's

recommendation that "the prosecution presented substantial evidence establishing Petitioner's guilt." (R&R 23.)

A "[p]etitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quotation marks omitted). A court examining a sufficiency of the evidence claim on habeas must first view the evidence in the light most favorable to the prosecution. *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (per curiam) ("[*Jackson v. Virginia*, 443 U.S. 307 (1979)] unambiguously instructs that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" (quoting *Jackson*, 443 U.S. at 319)); *accord Hamilton v. Superintendent, E. N.Y. Corr. Fac.*, No. 11-CV-1332, 2015 WL 13306815, at *15 (S.D.N.Y. Sept. 10, 2015) ("In evaluating a legal-insufficiency claim . . . 'the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (quoting *Jackson*, 443 U.S. at 318–19)), *report and recommendation adopted*, 2017 WL 19441144 (S.D.N.Y. May 9, 2017).

Importantly, even if a federal habeas court disagrees with the state court's decision regarding sufficiency, it may not overturn it unless the decision was "objectively unreasonable." *Renic v. Lett*, 559 U.S. 766, 773, (2010) (quotation marks omitted); *see also Cavazos*, 565 U.S. at 2 (emphasizing "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial"). The credibility of a witness is a determination made by the jury, so "a habeas court must defer to the assessments of the weight

of the evidence and credibility of the witnesses that were made by the jury." *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation omitted); *see also Cavazos*, 565 U.S. at 8 (vacating a judgment granting a sufficiency of the evidence claim, explaining, "it is not the job of [a habeas court] . . . to decide whether the [prosecution's] theory was correct"; "the jury decided that question, and its decision is supported by the record"). Therefore, in cases where "the jury's decision was largely a matter of choosing whether to believe [the petitioner's] version of events or to believe the version offered by the [State]," the Court "cannot say that no rational jury could have found guilt beyond a reasonable doubt. *Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981); *see also Holder v. Lamanna*, No. 18-CV-7431, 2020 WL 804902, at *12 (E.D.N.Y. Feb. 18, 2020) (similar).

Applying this caselaw, Judge McCarthy concluded that Petitioner's sufficiency of the evidence claim lacks merit. This Court agrees. After determining the elements of the charged crimes and correctly noting that the Second Department's ruling denying Petitioner's sufficiency of the evidence claim warrants AEDPA deference, 28 U.S.C. 2254(d)(1)–(2), Judge McCarthy summarized the overwhelming evidence presented at trial establishing Petitioner's guilt, (R&R 23–24).[3] First, Beatrice testified to specific details of her and Petitioner's plot to murder Terry to secure his life insurance policy, which they intended to use to start a new business together. (*Id.*; Dkt. No. 19-5 at 125.) Second, this testimony was corroborated by cell phone records and

---

[3] Petitioner also asserts that Judge McCarthy did not adequately address each element of his counts of conviction. (Obj. 4.) As to his First Degree Murder conviction, Petitioner argues that she "omits the very first part of prosecution's requirement," which is to prove that he caused Terry's death, and asserts that she "g[ave] her understanding of what Second Degree Criminal Possession of a weapon is," and that the prosecution did not prove that he possessed a gun. (*Id.* at 4–5.) At most, it seems that Petitioner either takes issue with the way in which Judge McCarthy organized the R&R (i.e., that she did not analyze his claim on an element-by-element basis), which does not render her findings inadequate, or he once again ignores the substantial evidence of his guilt, as set forth below. Either way, the argument fails.

intimate (and detailed) letters exchanged between Beatrice and Petitioner.  (R&R 24.; *see* Dkt. No. 19-4 at 304–10; *see* Dkt. No. 19-5 at 20–32.)  Third, the prosecution provided additional evidence of Petitioner's guilt, including cell-site location information ("CSLI") placing Petitioner at the scene of the crime when the murder occurred, (Dkt. No. 19-6 at 76–77), surveillance footage placing him in the area at the date and time the shooting occurred, (Dkt. No. 19-3 at 316–18), and ballistics evidence proving Terry was murdered by two gunshots from the same weapon (Dkt. No. 19-5 at 337–39).  In light of this record, the Court agrees that the prosecution presented more than sufficient evidence of Petitioner's guilt.

Petitioner, however, objects to various potions of Judge McCarthy's findings.  As to Beatrice's testimony, Petitioner asserts that Judge McCarthy erred in concluding that her credibility as a witness was for the jury to decide.  (Obj. 9.)  He contends that because Beatrice's testimony was inherently contradictory, "it has nothing to do with credibility."  (*Id.*)  Instead, Petitioner asserts, her testimony was "incredible or unreliable as a matter of law," and the jury had no other basis by which to find him guilty. (*Id.* at 10 (quoting *People v. Calabria*, 816 N.E.2d 1257, 1258 (N.Y. 2004)).)  *See Calabria*, 816 N.E.2d at 1258 ("[I]ncredibility as a matter of law may result [w]hen all of the evidence of guilt comes from a single prosecution witness who gives irreconcilable testimony pointing both to guilt and innocence, because in that event the jury is left without basis, other than impermissible speculation, for its determination of either." (quotations omitted)).  To demonstrate that Beatrice's testimony was unreliable, Petitioner points only to the fact that she at one point recanted her statements to police officers. (Obj. 10.)  Petitioner's argument fails to carry the day.  Not only is his assertion that Beatrice "[took] back everything she said about Petitioner's involvement [in Terry's murder]" taken entirely out of context, (*see* Dkt. No. 19-5 at 153–58), but the prosecution also presented

20

substantial evidence corroborating her testimony, (*see* R&R 24 (noting that the prosecution substantiated Beatrice's testimony with CSLI, surveillance footage showing Petitioner in the vicinity of the place of Terry's murder, and certain ballistics evidence)).  Thus, the jury ultimately had more than a sufficient basis upon which to find Petitioner guilty and Judge McCarthy rightly concluded that the Court should not disturb the jury's decision to credit Beatrice's testimony.  (*Id.*)

Next, with respect to the expert testimony, Petitioner asserts that: (1) there was no forensic or ballistic evidence to place him at the scene of Terry's murder; (2) the CSLI data could not directly connect him to the phone number in the vicinity of the murder; (3) the surveillance footage of the Red Dodge could not definitively identify that vehicle as his wife's car, or prove that he was driving it; and (4) the prosecution's expert testimony and evidence do not indicate that he shot Terry, or that he was even in the Peekskill area at the date and time of Terry's murder.  (*See generally* Obj. 2–9.)  However, the record again reflects that the prosecution presented substantial circumstantial evidence to support Petitioner's conviction.  In particular, expert testimony showed that CSLI data placed Petitioner in the area and that he called Terry's cell phone on the day of the murder.  (Dkt. No. 19-6 at 82–105.)  Petitioner's friend of fifteen years, Sandra Dolman, corroborated this testimony by confirming Petitioner's cell phone number—the same number that called Terry at the date and time of his death.  (Dkt. No. 19-3 at 333–37, 339–41.)  Further, a red Dodge Neon was registered to Petitioner's wife, and a red Dodge Neon was captured on surveillance footage traveling from Peekskill to Newburgh on the day and at around the time of Terry's death.  (*Id.* at 276–78, 316–17.)  On this record, the Court "cannot say that no rational jury could have found guilt beyond a reasonable doubt." *Gruttola*, 639 F.2d at 928 (2d Cir. 1981); *see also Ponnapula*, 297 F.3d at 180.

Petitioner's remaining objections are equally wanting.  In essence, he accuses Judge McCarthy of misreading the record and incorrectly applying it to his case, and suggests instead alternative explanations for the evidence adduced at trial.  (*See generally* Obj. 2–7.)  For instance, he asserts that Judge McCarthy took "pieces of Beatrice and Petitioner's phone calls to create a false narrative,"—i.e., that he and Beatrice were plotting to kill Terry and collect his life insurance policy—when instead, they were "talking about setting up a web site sex business," which Petitioner did not want to discuss over the phone.  (*Id*. at 6.)  But Petitioner overlooks that a habeas court must view "the evidence in the light most favorable *to the prosecution*" to ascertain whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319 (emphasis added).  Thus, Judge McCarthy's findings were entirely appropriate, even if there were alternate explanations theoretically more favorable to Petitioner.[4]  Moreover, as explained above, Judge McCarthy's conclusions are amply supported by the record, and the Court finds Petitioner's arguments to the contrary to be misleading and without merit.

Accordingly, the Court adopts Judge McCarthy's recommendation on this claim.

## 2.  Sixth Amendment Confrontation Clause

Petitioner next objects to Judge McCarthy's conclusion that New York Civil Rights Law § 50-a ("Section 50-a") procedurally barred his Sixth Amendment Confrontation Clause claim. (Obj. 10–11.)  He also renews his argument that the trial court violated his Sixth Amendment

---

[4] Similarly, Petitioner asserts that he made statements like "[d]on't raise any eyebrows," or "he's not going to get caught again" because he did not want the affair with Beatrice to be exposed, not because they were plotting a murder, (Obj. 7), and that his request for Beatrice to increase Terry's life insurance policy was simply was his attempt to take care of Beatrice since Terry had terminal cancer, (*id.* at 6–7).  Again, Petitioner does not get to re-try his case through this Petition and nothing about these claims remotely calls into question Judge McCarthy's thorough reasoning.

right to confront his accuser by denying him the ability to access Sergeant Henderlong's

personnel record and cross-examine him on his disciplinary history.  (*Id*. at 11.)

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

him."  U.S. Const. amend. VI.  Thus, a criminal defendant is entitled to "a meaningful

opportunity to cross-examine witnesses against him."  *McCray v. Capra*, 45 F.4th 634, 638 (2d

Cir. 2022) (quoting *Alvarez v. Ercole*, 763 F.3d 223, 229–30 (2d Cir. 2014)); *see also Davis v.

Alaska,* 415 U.S. 308, 315 (1974).

Challenges to trial court evidentiary rulings based on state law are generally not

cognizable on federal habeas review, *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) ("[S]tate

trial court evidentiary rulings generally are not a basis for habeas relief."), as a federal court

cannot disturb a state court's decision on a case or issue that rests on an independent and

adequate state ground, *Saunders v. LaManna*, No. 18-CV-12406, 2024 WL 2188866, at *11

(S.D.N.Y. Feb. 8, 2024) (citing *Garraway v. Phillips*, 591 F.3d 72, 75 (2d Cir. 2010)), *report and

recommendation adopted*, 2024 WL 1657419 (S.D.N.Y. Apr. 17, 2024).  There are two steps in

reviewing a state court's evidentiary ruling in connection with a habeas petition: "[t]he first step .

. . is to determine whether the state court decision violated a state evidentiary rule, as the proper

application of a presumptively constitutional state evidentiary rule would not be

unconstitutional."  *Hayes v. Lee*, No. 10-CV-5134, 2013 WL 4008638, at *6 (S.D.N.Y. July 30,

2013) (citation omitted).  If a reviewing court concludes that the trial court decision did violate

state law, the second step is to consider whether the "evidentiary error amounted to a deprivation

of due process" that was "so pervasive as to have denied [Petitioner] a fundamentally fair trial."

*Barrett v. Ricks*, No. 00-CV-4636, 2003 WL 22284164, at *7 (E.D.N.Y. Aug. 20, 2003).

First, Judge McCarthy concluded in the R&R that Petitioner's claim was procedurally barred because the trial court's denial of his request to examine Sergeant Henderlong's personnel file was an evidentiary ruling based on independent and adequate state law.  (R&R 19.)  This Court agrees.  At the time of Petitioner's trial, Section 50-a provided that:

> All personnel records, used to evaluate performance toward continued employment or promotion, under the control of any police agency . . . shall be considered confidential and not subject to inspection or review without the express written consent of such police officer . . . except as may be mandated by lawful court order.

N.Y. Civ. Rights Law § 50-a (repealed June 11, 2020).  As Judge McCarthy pointed out, New York courts did not mandate that officer records be released pursuant to Section 50-a "when requests to examine records [we]re motivated by nothing more than impeachment of witness' general credibility."  (R&R 21 (quoting *People v. Gissendanner*, 399 N.E.2d 924, 927 (N.Y. 1979)).)  Hence, the trial court had discretion to decide whether the records would be made available.  *Gissendanner*, 399 N.E.2d at 927 ("[The] availability [of such records] rest[ed] largely on the exercise of a sound discretion by the trial court.").

Utilizing that discretion, the trial court conducted an *in camera* review of Sergeant Henderlong's records and determined that the file should not be disclosed as there was "nothing relevant and material to [Petitioner's] case in th[e] records."  (Dkt. No. 19-4 at 38; *see also* Dkt. No. 19-5 at 360–61.)  The Second Department affirmed this ruling, holding that the trial court did not abuse its discretion.  (R&R 21 (citing *Murray*, 82 N.Y.S.3d at 456).)  Because the trial court made a lawful evidentiary ruling based on an independent and adequate state law, Judge McCarthy rightly determined that Petitioner's challenge was not a proper basis for habeas relief.  (*Id.*)  *Garraway*, 591 F.3d at 75 ("When a state court has decided a case on an independent and adequate state ground—whether substantive or procedural—we decline to review the state court's decision."); *see also Vega*, 669 F.3d at 126.

24

Petitioner contends, however, that Section 50-a is not "regularly followed by the State" and is thus inadequate.  (Obj. 11.)  In support of that assertion, he relies on *People v. Rouse*, 140 N.E.3d 957 (N.Y. 2019).  Petitioner's reliance on *Rouse* fails, however, for the simple reason that it has nothing to do with the issues in this case.  *Rouse* focused upon whether a trial court abused its discretion by precluding cross-examination of law enforcement officers on their misstatements to federal prosecutors and prior judicial determinations addressing their credibility.  *See* 140 N.E.3d at 961–64.  *Rouse* makes no mention of personnel records or Section 50-a at all, let alone discusses the law's regular or irregular application.  *See generally id.* Accordingly, the Court concludes there is no merit to Petitioner's argument that Section 50-a is "inadequate".

Second, the Court agrees with Judge McCarthy that even if Petitioner's confrontation clause claim was not procedurally barred, it still fails on the merits.  Assuming, arguendo, that the trial court's application of Section 50-a was improper, such application did not "amount[] to a deprivation of due process . . . so pervasive as to have denied him a fundamentally fair trial." *See Ricks*, 2003 WL 22284164, at *7.  Indeed, the record reflects that the exclusion of Sergeant Henderlong's did not outright preclude Petitioner from cross-examining Sergeant Henderlong. (R&R 22.)  Therefore, there was no Confrontation Clause violation because the trial court properly exercised its discretion in merely *limiting* the cross-examination of Sergeant Henderlong.  *See also Watson v. Greene*, 640 F.3d 501, 510 (2d Cir. 2011) (explaining that trial courts have discretion to "balance prejudice versus probative value" in limiting cross-examination without violating the Confrontation Clause); *Corby v. Artus*, 699 F.3d 159, 166–67 (2d Cir. 2012) (holding that a trial court did not abuse its discretion by limiting cross-examination and denying petitioner's Confrontation Clause claim).

25

Petitioner claims that Judge McCarthy's findings are "misplaced." (Obj. 11–13.) However, beyond unsupported assertions that Sergeant Henderlong was dishonest and unreliable, Petitioner fails to articulate how being denied access to the records prejudiced him. (*Id.*; *see also* Pet. 5.) He simply avers that "[t]he jury was deprived of being able to assess the true credibility of this witness," which "prejudice[d] [] Petitioner because he was denied an opportunity to present this defense." (Obj. 13.)[5] That conclusory assertion notwithstanding, it is clear that the trial judge did not abuse her discretion in limiting the scope of the cross-examination of the witness, *Corby*, 699 F.3d at 166–67, let alone commit an error "that would rise to the level of fundamental unfairness," *McCray v. Artuz*, No. 93-CV-5757, 1994 WL 603057, at *2 (S.D.N.Y. Nov. 3, 1994). Thus, the Court adopts Judge McCarthy's recommendation and denies Petitioner habeas relief on his Confrontation Clause claim.

### 3.  Ineffective Assistance of Appellate Counsel

In his Objections, Petitioner asserts that Judge McCarthy wrongly recommended denying his ineffective assistance of appellate counsel claim. (Obj. 13–14.)

The Sixth Amendment of the United States Constitution provides that a criminal defendant shall enjoy the right to effective assistance of counsel. *See Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (per curiam). A claim for ineffective assistance of counsel is analyzed under the

---

[5] Petitioner also relies upon *Rouse* to argue that the exclusion of exclusion of Sergeant Henderlong's personnel files deprived him of a fundamentally fair trial, claiming that, like the officers in *Rouse*, Sergeant Henderlong lied to federal authorities. (Obj. 11–12.) This accusation is unsupported by the record. Even if it was supported by the record, *Rouse* is inapplicable. In *Rouse*, the court held that because the defendant's convictions "hinged on the identification of defendant as the shooter by the officers," and the prosecution presented no additional evidence to corroborate their testimony, the evidentiary error in preventing the defense from cross-examining the officers about prior dishonesty was not harmless. 140 N.E.3d at 964. Here, by contrast, the record indicates that the prosecution presented a plethora of evidence sufficient to convict Petitioner, *see supra* Section II.B.1, and the case against Petitioner did not depend simply on Sergeant Henderlong's credibility.

two-part test set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984): to

be entitled to relief, a petitioner must show that (1) the attorney's conduct was constitutionally

deficient because it fell below an "objective standard of reasonableness," *id.* at 687–88, and that

(2) the petitioner was prejudiced by the ineffective representation—that is, but for the deficiency,

there is a reasonable probability that "the result of the proceeding would have been different," *id.*

at 694; *Aparicio,* 269 F.3d at 95 ("*Strickland*'s two-prong test applies equally to claims of

ineffective assistance of appellate counsel on a defendant's first appeal as of right." (citation

omitted)).

To determine whether counsel's conduct is deficient under the first prong, "the court

must determine whether, in light of all of the circumstances, the identified acts or omissions were

outside the wide range of professionally competent assistance." *Lindstadt v. Keane*, 239 F.3d

191, 198–99 (2d Cir. 2001) (alterations adopted) (quotation marks omitted).  A petitioner cannot

meet this prong based solely on disagreements with counsel's strategy or advice.  Indeed, there is

a "strong presumption" that counsel's conduct fell within the vast spectrum of reasonable

assistance, and it is Petitioner's burden to demonstrate "that counsel's representation was

unreasonable under prevailing professional norms and that the challenged action was not sound

strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Bonilla v. Lee*, 35 F.

Supp. 3d 551, 575 (S.D.N.Y. 2014) (same); *Henderson v. Martuscello*, No. 10-CV-5135, 2013

WL 6463348, at *15 (S.D.N.Y. Dec. 10, 2013) ("[S]trategic choices made after thorough

investigation of law and facts relevant to plausible options are virtually unchallengeable, even

where counsel adopts a course of action (or inaction) that seems risky, unorthodox[,] or

downright ill-advised." (first alteration in original) (quotations marks omitted)).  Thus, to satisfy

this prong, Petitioner must demonstrate that his counsel "made errors so serious that counsel was

not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  In assessing counsel's conduct, "a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citations omitted) (quoting *Strickland*, 466 U.S. at 490).

To satisfy the second prong, "[the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding below would have been different." *United States v. Caracappa*, 614 F.3d 30, 49 (2d Cir. 2010) (quotation marks and alteration omitted); *Mayo*, 13 F.3d at 534 ("To establish prejudice in the appellate context, a petitioner must demonstrate that "there was a 'reasonable probability' that his claim would have been successful before the state's highest court." (alterations adopted)).  "A reasonable probability is a one sufficient to undermine confidence in the outcome of the . . . appeal." *Aparicio*, 269 F.3d at 95.  "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding," as "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693 (citation omitted).  "'[P]urely speculative' arguments about the impact of an error do not establish prejudice." *DeCarlo v. United States*, No. 11-CV-2175, 2013 WL 1700921, at *4 (S.D.N.Y. Apr. 17, 2013) (alteration in original) (quoting *United States v. Weiss*, 930 F.3d 185, 199 (2d Cir. 1991)).  Moreover, "[a] defendant cannot show prejudice if the claim or objection that an attorney failed to pursue lacks merit." *United States v. Barrett*, 102 F.4th 60, 73 (2d Cir. 2024).

Finally, the Supreme Court has instructed, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the [petitioner] makes an insufficient showing on one." *Id.* at 697.

Here, Petitioner contends that Judge McCarthy incorrectly rejected his claim of ineffective assistance of appellate counsel. Specifically, he maintains that his appellate lawyer failed entirely to obtain and investigate the grand jury, arraignment, *Huntley* and other sealed records, and such failure by appellate counsel "deprived him of his due process right[s]" because it precluded him from raising certain claims. (Obj. 13–14.) The Court disagrees.

With respect to the first *Strickland* prong, Petitioner cannot demonstrate that his appellate counsel was incompetent for failing to obtain and investigate specific records. As an initial matter, it is not apparent that appellate counsel indeed failed to do so. As Judge McCarthy highlighted, most of the documents that Petitioner's appellate counsel supposedly did not investigate were in fact part of the trial record, as apart from the grand jury transcripts, the Appellate Division ordered that every file be unsealed for the limited purpose of appeal. (R&R 31.) Accordingly, it was reasonable to assume, as Judge McCarthy did, that appellate counsel reviewed the record prior to filing his appeal. (*Id.* at 32.) Further, as Judge McCarthy recognized, (*id.* at 31), making strategic choices as to which issues to emphasize or pursue on appeal does not demonstrate that appellate counsel acted unreasonably, *Smith v. Robbins*, 528 U.S. 259, 287–88 (2000) (noting "it is difficult to demonstrate that counsel was incompetent" for "fail[ing] to raise a particular claim" because "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal"); *Aparicio,* 269 F.3d at 95 ("[I]t it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument. Counsel is not

obliged to advance every nonfrivolous argument that could be made."); *Mayo,* 13 F.3d at 533 (same).

Although the Court need not reach the second *Strickland* prong, the Court agrees with Judge McCarthy that Petitioner does not explain how his appellate counsel's failure to investigate the pretrial records affected the outcome of his proceeding. (R&R 31.) Petitioner contends that he already adequately addressed this in his memorandum of law and coram nobis petition. (Obj. 14.) However, even in those documents, Petitioner fails to concretely articulate how the information in the pretrial documents would have changed the outcome of his proceeding. Instead, he merely repeats his conclusory assertions that the absence of these documents "deprive[d] Petitioner of meaningful assistance and the due process right to a fair trial." (*See, e.g.*, Pet. 17; *see generally* Res.'s Opp'n Ex. 22.) Such "purely speculative arguments about the impact of an error do not establish prejudice." *DeCarlo*, 2013 WL 1700921, at *4 (alteration in original) (quotations omitted); *Barrett*, 102 F.4th at 73 ("A defendant cannot show prejudice if the claim or objection that an attorney failed to pursue lacks merit." (quotation marks omitted)). Accordingly, as Petitioner has not shown the investigation of these documents would have led to any relevant information—let alone a meritorious argument—he has failed to demonstrate "a 'reasonable probability' that his claim would have been successful before the state's highest court." *Mayo*, 13 F.3d at 534 (alterations adopted).

Finally, Judge McCarthy addressed three other issues that Petitioner raised in the R&R: appellate counsel (1) lacked "understanding of the appellate process," demonstrated by his "hopelessly flawed brief;" (2) did not communicate with him after he submitted his brief; and (3) did not dedicate the necessary efforts to Petitioner's appeal. (R&R 29, 31.) She concluded that each claim is meritless, and Petitioner did not clearly object to her findings on these issues.

(*Id.* at 33; *see generally* Obj.)  A court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg*, 564 F. Supp. 2d at 226 (quoting Fed. R. Civ. P. 72(b)(2)); *see also Mack*, 2023 WL 6200170, at *2 (same).  "Clear error is found only when, upon review of the entire record, the Court is left with the definite and firm conviction that a mistake has been committed." *Whitley v. Bowden*, No. 17-CV-3564, 2019 WL 1953941, at *1 (S.D.N.Y. May 1, 2019) (quotation marks omitted); *accord United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006).  The Court has carefully reviewed the R&R and the Petition, and finding no substantive error, clear or otherwise, adopts Judge McCarthy's recommendation on this issue.

As such, the Court concludes that Petitioner has failed to demonstrate that he received ineffective assistance of appellate counsel.  Therefore, the Court adopts Judge McCarthy's recommendation and denies Petitioner habeas relief on this claim.

### 4.  Ineffective Assistance of Trial Counsel

Finally, Petitioner also claims that his trial counsel was ineffective because he failed to object to certain issues and properly prepare for trial by investigating various matters.  (*See* Pet. 12–14.)  Judge McCarthy recommended denying this claim.  (R&R 29.)  Not only did she find that the Second Department's ruling was entitled to AEDPA deference, but also that Petitioner's claims were meritless since trial counsel made reasonable strategic choices under the circumstances.  (*Id.* at 26–29).  Moreover, Judge McCarthy noted that even if trial counsel's actions were deficient, Petitioner fails to explain how it undermines confidence in the outcome of the proceedings.  (*Id.* at 29.)

Petitioner does not appear to object to this conclusion.  (*See generally* Obj.)  As noted, a court "may adopt those portions of the . . . report [and recommendation] to which no 'specific

written objection' is made," absent clear error. *Eisenberg*, 564 F. Supp. 2d at 226 (quoting Fed. R. Civ. P. 72(b)(2)); *see also Mack*, 2023 WL 6200170, at *2 (same). Finding no substantive error, clear or otherwise, the Court adopts Judge McCarthy's recommendation on this issue.

### III.  Conclusion

The Court, having conducted a thorough review of the remainder of the R&R, finds no error, clear or otherwise. Thus, the Court adopts in full the outcome of Judge McCarthy's R&R. Petitioner's writ of habeas corpus is accordingly dismissed with prejudice.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000). The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a [petitioner's] good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and noting that an appeal may not be taken in forma pauperis if the court certifies in writing that it was not taken in good faith).

The Clerk of Court is respectfully directed to mail a copy of this Order to Petitioner and close this case.

SO ORDERED.

Dated:    September 30, 2024
          White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge

32